UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SPRAGUE ENERGY CORP.,
    Plaintiff,

v.

CITY OF LOWELL,
    Defendant.

CIVIL ACTION

05 11248 RGS

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED ___
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK ___
DATE ___

MAGISTRATE JUDGE _____

## COMPLAINT

Plaintiff, Sprague Energy Corp. ("Sprague Energy"), files this Complaint against the Defendant, City of Lowell, Massachusetts (the "City") to collect an unpaid balance due from the City as payment for natural gas services that Sprague Energy provided to the City's public schools.

### Parties

1. Sprague Energy is a Delaware corporation with a principal place of business at 2 International Drive, Suite 200, Portsmouth, New Hampshire. Sprague Energy is registered to do business within the Commonwealth of Massachusetts.

2. The City is a duly formed municipal corporation having a principal place of business at City Hall, 375 Merrimack Street, Lowell, Middlesex County, Massachusetts.

### Jurisdiction and Venue

3. Jurisdiction is proper in this Court under 28 U.S.C. §1332 in that the instant dispute is between citizens of different states and the amount in controversy exceeds $75,000. Venue is proper under 28 U.S.C. §1391(a).

## Facts

4. Sprague Energy and the City entered into a Contract, dated as of July 11, 2003, (the "Contract") whereby Sprague Energy agreed to provide natural gas services to all 34 schools within the City's public school system. For its part, the City agreed to pay Sprague Energy for its services. A true and accurate copy of the Contract is attached hereto as Exhibit A.

5. The City entered the Contract through its School Committee and with the approval of the City Manager. See Exhibit A.

6. The Contract represented a continuation of the commercial relationship that had previously existed between the parties pursuant to an earlier "Natural Gas Sales Agreement," dated as of February 1, 2002, concerning Sprague Energy's provision of natural gas service to all 34 schools within the City's public school system. A true and accurate copy of the Natural Gas Sales Agreement is attached hereto as Exhibit B.

7. Pursuant to the Natural Gas Sales Agreement, the City had previously agreed to pay for the natural gas services provided by Sprague Energy, along with all fees and charges associated with such services.

8. Specifically included in the fees to be charged to and paid by the City were so-called "assigned capacity charges" assessed by Keyspan Energy Delivery's Colonial Gas Company subsidiary ("Keyspan") and by several F.E.R.C. jurisdictional natural gas pipeline companies[1] related to natural gas storage, transmission and peaking services assigned to Sprague by Keyspan in conjunction with the City's natural gas accounts.

9. Throughout the terms of both the Natural Gas Service Agreement and the Contract Sprague Energy was required to, and did, pay these assigned capacity charges to Keyspan and to

the natural gas pipeline companies pursuant to Massachusetts Department of Telecommunications and Energy Order D.T.E. 98-32-B and pursuant to the terms of the relevant Keyspan natural gas tariff.

10. Throughout the terms of both the Natural Gas Service Agreement and the Contract, and in connection with the natural gas service that Sprague Energy provided to the City, Sprague Energy billed the City of Lowell, in addition to other costs of delivery, for the assigned capacity charges.

11. The City paid the invoices that Sprague Energy submitted throughout 2002 and into early 2003, which invoices contained, among other things, the capacity and commodity charges.

12. However, the City's Auditor refused to authorize payment for the invoices Sprague Energy submitted concerning natural gas services provided to the City from January to June 2003.

13. The City's Auditor maintained that the Natural Gas Service Agreement was invalid and thus not binding upon the City because it was not executed before the date certain of the services were provided by Sprague and because it was signed only by the Assistant Superintendent for Finance and Operations for the Lowell Public Schools, who was not authorized to enter contracts on the City's behalf.

14. In order to secure authorization to pay Sprague Energy's invoices for January through June 2003, the City was required to, and did, seek special legislation from the General Court of the Commonwealth to authorize payment relative to the invoices, despite any irregularities which existed relative to the Natural Gas Service Agreement.

---

[1] Keyspan assigned to Sprague a portion of its natural gas transmission and storage contracts with El Paso Corporation's Tennessee Gas Pipeline subsidiary, and National Fuel Gas Company's National Fuel Gas Supply Corporation subsidiary.

15. Thereafter, the parties entered into the Contract, relative to the continuation of Sprague's supply of natural gas services to all of the City's public schools and the City's continuing agreement to pay for such services. See Exhibit A.

16. Between July 2003 and June 2004, Sprague Energy did in fact provide natural gas services to the City's public schools and sent invoices to the City reflecting the amounts due for such services, including the assigned capacity charges Sprague Energy incurred in performing its services.

17. Despite Sprague Energy's full performance of its contractual obligations to provide natural gas to the City's public schools and to pay the assigned capacity charges to Keyspan and to the natural gas pipeline companies for the period between July, 2003 and June, 2004, the City has failed and refused to pay capacity charges totaling $175,488.55, as reflected on invoices dated between September 2, 2003 and August 19, 2004.

18. The City has also failed and refused to pay $34,564.61 in natural gas commodity charges payable to Sprague Energy in connection with the delivery of natural gas.

19. Finally, the City has failed and refused to make any payments relating to certain adjustments by Keyspan to the City's account, which increased the amount owed by the City by an additional $7,588.00.

20. The total unpaid capacity, commodity, and adjustment charges to date, therefore, are $217,660.25. However, there also exists an unapplied credit to the City's account in the amount of $32,564.23, which reduces the total unpaid amount currently due to $185,096.02.

21. Sprague Energy has made repeated demands for payment upon the City and has transmitted documentation in support of its claim, but the City has not, to date, responded to any of these communications.

## COUNT I
## BREACH OF CONTRACT

22. The plaintiff incorporates by reference each and every allegation set forth above as if fully recited herein.

23. The Contract is a valid and enforceable contract between Sprague Energy and the City.

24. By delivering the natural gas to the City's public schools and paying the assigned capacity and other charges to Keyspan and to the natural gas pipeline companies, Sprague Energy fulfilled its obligations under the Contract.

25. Pursuant to the Contract, the City was obligated to pay Sprague Energy for all assigned capacity and commodity charges that Sprague Energy incurred in providing natural gas to the City's public schools.

26. By failing and refusing to pay the remaining balance due to Sprague Energy for its provision of natural gas services, the City has breached the Contract.

27. As a result of the City's breach of the Contract, Sprague Energy has suffered damages of at least $185,096.02.

## COUNT TWO
## QUANTUM MERUIT

28. The plaintiff incorporates by reference each and every allegation set forth above as if fully recited herein.

29. The City has been unjustly enriched by receiving natural gas through its Contract with Sprague Energy, with the knowledge that Sprague Energy was paying the assigned capacity charges to Keyspan and to the natural gas pipeline companies and incurring additional

commodity charges in connection with the delivery of said natural gas, but nonetheless refusing to pay Sprague Energy the amounts invoiced for those capacity and commodity charges.

30. The reasonable value of the charges incurred by Sprague Energy on the City's behalf in connection with the natural gas services Sprague Energy provided to the City's public schools for which Sprague Energy has not been paid is $185,096.02.

**WHEREFORE**, Plaintiff, Sprague Energy respectfully requests that this Court:

(1) Enter judgment for Plaintiff Sprague Energy Corp. against Defendant City of Lowell in the amount of its indebtedness as the Court shall determine plus all interest, costs and attorney's fees provided by law; and

(2) Enter such further relief as it deems fair, just and equitable.

Sprague Energy Corp.,
By its attorneys,

Mark G. DeGiacomo, BBO #118170
Michael P. Connolly, BBO #637642
Murtha Cullina LLP
99 High Street
Boston, MA 02110
(617) 457-4000 Telephone

306792-1                                6

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Sprague Energy Corp.

### DEFENDANTS
City of Lowell

(b) County of Residence of First Listed Plaintiff  Rockingham County NH
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Middlesex County, MA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Michael P. Connolly
Murtha Cullina LLP    617-457-4000
99 High Street, Boston, MA 02110

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability |  | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C., sec. 1332
Brief description of cause: action to recover unpaid balance due under contract for supply of natural gas to City's public schools.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $185,096.02
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE 6/15/05

SIGNATURE OF ATTORNEY OF RECORD /s/ Michael P. Connolly

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Sprague Energy Corp. v. City of Lowell__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ___ I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    ___ II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    _X_ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

    ___ IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

    ___ V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]    NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]    NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]    NO [X]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]    NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [X]    NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [X]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Michael P. Connolly, Esq.__
ADDRESS __Murtha Cullina LLP 99 High Street, Boston, MA 02110__
TELEPHONE NO. __617-457-4000__

(CategoryForm.wpd - 5/2/05)

PRAGUE ENERGY CORP.

WITH

# CITY OF LOWELL

CONTRACT FOR

PROVIDE NATURAL GAS TO ALL PUBLIC SCHOOLS

CONTRACTOR _____ COPY

FROM THE OFFICE OF
CITY SOLICITOR, LOWELL, MASS.

THIS AGREEMENT made and entered into this July 1th, 2003, by and between SPRAGUE ENERGY CORP, having a usual place of business at Two International Drive, Suite 200, Portsmouth, NH 03801, hereinafter called "CONTRACTOR", and the CITY OF LOWELL, a municipal corporation duly established by law and located in Middlesex County, Commonwealth of Massachusetts, acting by and through its School Committee, hereinafter called "CITY", WITNESSETH: That,

WHEREAS, The CITY is desirous of obtaining services of a CONTRACTOR to provide natural gas to all public schools in the City of Lowell; and

WHEREAS, The CITY has accepted the CONTRACTOR'S offer, subject to the conditions and agreements herein contained:

NOW, THEREFORE, IT IS AGREED by and between the parties hereto, as follows:

-1-

The CONTRACTOR will report to the Superintendent of the Lowell Public Schools.

-2-

The CITY agrees to pay the CONTRACTOR for services to be provided under this Agreement, a total sum not to exceed One Million Five Hundred Thousand ($1,500,000.00) Dollars.

-3-

Services to be provided under this Agreement shall commence upon execution of said contract and end June 30, 2004.

-4-

Payment shall be made on the twentieth day of the month for services provided during the preceding month, provided an invoice is filed in the Office of the Superintendent of Schools on or before the first day of the month in which payment is to be made. Any payment under this Agreement shall not constitute or be deemed a waiver, relinquishment, release or abandonment of any claim which the City may have against the CONTRACTOR for breach of this Agreement.

-5-

It is further agreed by the CONTRACTOR that, in the event the CITY is sued in a court of law or equity, or demand is made upon the CITY for payment of any damages arising out of the CONTRACTOR'S performance or non-performance of this Contract, then the CONTRACTOR'S liability for such action or non-action shall be governed by the provisions of M.G.L. Chapter 258.

-6-

Contractor agrees that its attention has been called to the provisions of the "Reserve System" Ordinance of the City of Lowell, Which is now incorporated in the "The Code of Ordinances City of Lowell, Massachusetts", passed by the City Council on April 26, 1988 and

Amendments Thereto and that each purchase order, so-called, issued in accordance with Chapter 7, Section 7-76 of said Code to cover the services to be rendered under this Agreement shall be made a part hereof by reference. It is further agreed that no obligation shall be considered to have incurred under this Agreement unless and until a purchase order shall have been duly issued and approved.

And further, that the obligation incurred shall be limited to the amount set forth in the purchase order or purchase orders duly issued and approved.

-7-

It is further agreed that either party may terminate this Agreement at any time, with or without cause, upon thirty (30) days' written notice to the other party, sent by certified mail, to the usual place of business of the other party.

-8-

The undersigned certifies under penalties of perjury that this bid or proposal has been made and submitted in good faith and without collusion or fraud with any other person. As used in this certification, the word "person" shall mean any natural person, business, partnership, corporation, union, committee, club or other organization, entity, or group of individuals.

-9-

This Agreement is subject to all laws in the Commonwealth of Massachusetts, federal, state and local which are applicable to this Agreement and it is presumed that CONTRACTOR is cognizant thereof.

-10-

The CONTRACTOR shall give his personal attention constantly to the faithful performance of the work and shall keep the same under his/her personal control and shall not assign nor sublet the work or any part thereof without the previous written consent of the City and shall not, either legally or equitably, assign any of the monies payable under this Agreement or his/her claim thereto unless by and with the written consent of the City.

-11-

The Contractor agrees that before commencing any work to be done under this Agreement, it shall provide, as applicable, at its own cost and expense, insurance for the payment of compensation and the furnishing of other benefits under the provisions of General Laws, Chapter 152, and amendments thereto, to cover all employees to be employed by the Contractor in connection with the work to be done under this Agreement; and the said Contractor agrees that it shall continue in force and effect said policy of insurance during the period covered by this Agreement.

Failure to provide and continue in force said insurance shall be deemed a material breach of the Agreement and shall operate, without notice of any kind to the said Contractor, as an immediate termination of this Agreement. In the event that the City should be obliged or required to pay compensation or furnish benefits to any of the said Contractor employees, in accordance with the provision of General Laws, Chapter 152, and amendments thereto,

the said Contractor agrees that he will reimburse and indemnify the said City from any payments it may be obliged or required to make under the provisions of General Laws, Chapter 152, and amendments thereto.

-12-

It is understood and agreed by the City and the Contractor that pursuant to the code of the City of Lowell, section 20-11, a contract performance record form must be completed on this contract by the Department head or his/her designee, who is supervising this contract, and such contract performance Record form must be submitted to the City Manager, City Auditor, and the Purchasing Agent prior to Release of final payment under this contract. If requested by the Contractor, a copy of the contract Performance record form shall be furnished to the Contractor.

-13-

The undersigned certifies under penalties of perjury that all municipal fees, including real estate taxes, due and owing to the City of Lowell have been paid in full.

-14-

IN WITNESS WHEREOF, the said SPRAGUE ENERGY CORP. and the said CITY OF LOWELL hereto and to a duplicate and triplicate hereof, set their hand and seals, if any, and these presents, together with said duplicate and triplicate to be signed in name and behalf by their duly authorized officers the day and year first above written.

APPROVED:

BY: _____
John F. Cox (City Manager)

APPROVED AS TO FORM:

BY: _____
Christine P. O'Connor
First City Solicitor

DATE: 7/17/03

SPRAGUE ENERGY CORP.

_____
VP Industrial Marketing
02-0415440
Federal ID# or Social Security #

CITY OF LOWELL

_____

_____

_____
SCHOOL COMMITTEE

**SPRAGUE ENERGY CORP.**
**NATURAL GAS SALES AGREEMENT**

This Agreement entered into as of this **1st** day of **FEBRUARY , 2002** by and between **SPRAGUE ENERGY CORP.** ("Seller") with offices at Two International Drive, Suite 200, Portsmouth, NH 03801 and **CITY OF LOWELL - LOWELL PUBLIC SCHOOLS** (Buyer") with offices 155 Merrimack Street, Lowell, MA 01852. In consideration of the mutual covenants, undertakings, terms and conditions set forth below, the Seller and Buyer agree as follows:

1.     Type of Service. Seller agrees to sell to Buyer, and Buyer agrees to purchase from Seller natural gas ("Gas") on the terms and conditions hereinafter set forth. Each sale and delivery by Seller and purchase and receipt by Buyer shall be pursuant to one of the following available types of services offered by Seller as selected by Buyer and noted on the "Sales Confirmation" delivered by Buyer and accepted by Seller as set forth in Exhibit A. In the event "Type of Service" is not noted on any Sales Confirmation, then the service shall be "Interruptible Service".

a.     "Firm Service" shall mean Buyer shall be required to purchase and receive, and Seller shall be required to sell and deliver, one hundred percent (100%) of the volumes of Gas specified in "Gas Quantity" on Buyer's accepted Sales Confirmation. Failure to buy or sell such volumes shall be a breach of this Agreement unless such failure is caused by an event of Force Majeure, as defined herein, or as provided for Article 12.

b.     "Baseload Service" shall mean the sale and purchase of gas on a firm basis by each party. Failure to buy or sell such volumes shall be a breach of this Agreement unless such failure is caused by an event of Force Majeure, as defined herein, or as provided for Article 12.

c.     "Interruptible Service" shall mean either Buyer or Seller may interrupt or reduce deliveries or receipts of Gas for any reason, except price, without incurring liability to the other party other than for monies due for Gas actually delivered.

d.     "Swing Service" shall mean either Buyer or Seller may interrupt or reduce deliveries of Gas for any reason, including price, without incurring liability to the other party other than for monies due for Gas actually delivered.

2.     Sales Confirmation. Each sale and delivery by Seller and purchase and receipt by Buyer shall be pursuant to and documented under a Sales Confirmation as set forth in Exhibit A attached hereto and incorporated herein by reference. Each Sales Confirmation shall cover one or more Delivery Periods and contain such terms and conditions regarding price, type of service, gas quantity, delivery points and other matters as the parties may agree. No Sales Confirmation shall be binding upon Seller unless and until accepted by Seller, which acceptance shall be evidenced by the signature of a duly authorized officer or agent of Seller. Any Sales Confirmation issued by Seller shall be deemed accepted by Buyer two (2) business days after delivery to Buyer, or sooner if countersigned and returned to Seller. Buyer shall be solely responsible for notifying Seller of any inaccuracies in the Sales Confirmation. Each of the parties hereto, covenant and agree that facsimile, fax and other mechanically or electronically produced counterparts and signatures of or on any Sales Confirmation may, for all purposes, be relied upon by the other as if originals. Each Sales Confirmation shall be subject to the terms and conditions of this Agreement and shall be an integral part of this Agreement whether or not annexed hereto.

5/9/2003

1

3. Notice. Any notice, request, demand, or statement given pursuant to this Agreement (including, but not limited to, Sales Confirmations) shall be in writing and deemed given (a) immediately upon confirmed receipt by telex, fax or reputable express service, or directed to the address of the parties as follows (b) two business days after deposited in the United States mail, first class postage, prepaid.

| NOTICE/CORRESPONDENCE: | | NOTICE/CORRESPONDENCE: | |
|---|---|---|---|
| SELLER: | SPRAGUE ENERGY CORP. | BUYER: | CITY OF LOWELL |
| | | | LOWELL PUBLIC SCHOOLS |
| | Two International Drive, Suite 200 | | 155 Merrimack Street |
| | Portsmouth, NH 03801 | | Lowell, MA 01852 |
| | Attn: Natural Gas Administration | Attn: | Steve Furtado |
| | Telephone No.: (603) 431-1000 | Telephone: | (978) 937-7620 |
| | Fax No.:       (603) 430-5320 | Fax No.: | (978) 441-3761 |

**PAYMENT**

**INVOICE**

| SELLER CHECK: | SPRAGUE ENERGY CORP. PO Box 30749 Hartford, CT 06150 | BUYER: | Same as above |
|---|---|---|---|
| | | Attn: | |

**WIRE TRANSFER:** SPRAGUE ENERGY CORP
Chase Manhattan Bank
New York, NY
ABA #021000021
Account # 910-2-720233

4. Billing. On or before the 10th day of each month, Seller shall render to Buyer a billing statement showing the quantity and price of Gas delivered and any other charges (as applicable) for the preceding month. Buyer shall pay Seller the amount shown as due on each such billing statement so that Seller receives payment no later than the earlier to occur of (a) the twenty-fifth (25th) day of the month in which said billing statement is rendered, or (b) within ten days of Buyer's receipt of each billing statement. Failure to pay when due shall be cause for Seller to suspend performance (without further notice) or to terminate this Agreement and any outstanding Sales Confirmation (upon ten days written notice). Interest shall be due on all late payments at the Prime Rate (reported by The Wall Street Journal or its successor publication), plus two and one half percent (Prime + 2 ½%), or the maximum legal rate if lower. Either party shall be entitled to verifiable billing adjustments requested in writing within two years of the date of the statement to be adjusted.

5. Term. This Agreement shall be in full force and effect as of the date first above written and shall continue for an initial term of one year and shall automatically renew for additional one year terms unless terminated by either party at least ninety (90) days prior to the end of any contract year. Notwithstanding any termination of this Agreement, any Sales Confirmation received and accepted by Seller shall be subject to all of the terms and conditions of this Agreement.

6. Credit. Seller and Buyer agree that this Agreement is conditioned upon Buyer meeting the credit requirements as from time to time established by Seller's Corporate Credit Department. Seller's continued performance of its obligations under this Agreement and under any Sales Confirmation shall be contingent upon Buyer continuing to meet said credit requirements. Buyer agrees that Seller may, prior to any sales

5/9/2003

2

made hereunder require Buyer to provide a sufficient bond, letter of credit, surety or other evidence of credit worthiness satisfactory to Buyer. Buyer agrees to provide such financial information, financial statements, annual reports, securities filings and credit authorizations as Seller shall reasonably and from time to time request for the purpose of assessing and monitoring Buyer's financial condition and credit worthiness. Any material, adverse change in Buyer's financial condition shall be cause for suspension of Seller's performance hereunder.

7.      Pricing. The price Buyer shall pay Seller shall be as set forth in the applicable Sales Confirmation. Buyer shall also be liable for all taxes (including sales, use, distribution, excise or other taxes, but not income taxes), local distribution company ("LDC") fees and charges as provided in Article 10 and similar taxes or charges whether stated separately or made a part of the price.

8.      Delivery. The Delivery Point(s) for Gas sold hereunder shall be set forth in the applicable Sales Confirmation. Buyer shall take title to the Gas at the Delivery Point(s). Upon delivery, Seller shall not be responsible or liable for any loss, damage, injury or death caused by the Gas or the further use, transportation or handling thereof.

9.      Transport. Definitions (not otherwise provided herein), quality specifications and measurement and tests shall be as set forth in the tariff of the transporter receiving the Gas at the Delivery Point(s). Seller shall deliver the Gas in compliance with said tariff and free of liens into the facilities of the receiving transporter.

10.     Nominations. Seller shall be responsible for transportation of the Gas to the Delivery Point(s). Buyer shall be responsible for transportation and handling of the Gas at and from the Delivery Point(s). Buyer and Seller shall cooperate to ensure that delivery nominations are made in a timely manner to all pipelines and the LDC's and that such nominations reflect actual expected deliveries and receipts. If either party becomes aware of any reason why the nominated volumes may not be delivered or taken, that party shall notify the other party as soon as possible. The parties shall cooperate to ensure that corrected nominations are provided to pipelines and LDC's as soon as possible. Both parties shall be obligated to use reasonable efforts to avoid causing pipeline and LDC imbalances and to determine the cause of any pipeline or LDC imbalances for which a penalty may be imposed. The party responsible for any imbalance charge and/or penalty charge shall be obligated to pay such penalty. Upon request, Buyer shall provide to Seller copies of Buyer's transporter(s) statements, reports or meter readings pertinent to Gas deliveries hereunder.

11.     Applicable Tariffs. The Gas sold hereunder is deregulated pursuant to the Gas Wellhead Decontrol Act of 1989. This Agreement shall be subject to all valid local, state and federal laws and the orders, directives, rules and regulations of any governmental body or official having jurisdiction.

12.     Force Majeure. Except for Buyer's obligation to pay for Gas delivered, neither party hereto shall be liable for any failure to perform hereunder when such failure is due to an event of force majeure. "Force majeure", as used herein, shall mean acts of God, present and future valid orders, rules, regulations and tariffs of any governmental entity having jurisdiction over the sale, transport or delivery of Gas, fires, storms, floods, washouts, explosions, breakage or freezing of pipelines, inability to obtain easements or rights-of-way, the making of repairs or alterations to pipelines, production plants, Delivery Points or other facilities, the failure of any pipeline or LDC to accept Gas for delivery for any reason, LDC operational flow orders, partial or entire failure of gas supply or any other similar cause, whether of the kind enumerated above or otherwise so long as the causes are not reasonably within the control of the party claiming "force majeure". Any event of force majeure shall, so far as possible, be reported to the other party immediately and remedied with all reasonable dispatch.

5/9/2003

13. **Default and Remedies.** Upon any breach or default of any Firm Service obligation under this Agreement, the non-defaulting party's damages shall be calculated as and equal to said non-defaulting party's losses on repurchase or resale (as the case may be) of the Quantity of Gas set forth in the applicable Sales Confirmation; provided that, if no repurchase by Buyer or resale by Seller is made, then said damages shall be an amount equal to fifteen percent (15%) of the Price set forth in the applicable Sales Confirmation, multiplied by the MMBTU volume of gas not delivered or received, plus the recovery of any unused firm transportation demand charges incurred as a result of the breaching party's failure to deliver or receive the volumes specified in Quantity therein, whether or not said loss is due to failure to obtain or maintain credit, or otherwise.

14. **Events of Default.** An "Event of Default" shall mean, the occurrence of any of the following:

    (a) the failure by a party to make, when due, any payment required under the Sales Agreement or this Agreement where such failure is not remedied within three (3) Business Days after written notice of such failure is given to the defaulting Party by the non-defaulting Party and provided the payment is not subject of a good faith dispute.

    (b) any representation or warranty made by a party herein shall at any time prove to be false or misleading in any material respect when made or deemed to be repeated;

    (c) the failure of a party to perform any covenant set forth in this Agreement (other than the events that are otherwise specifically covered in this Section 14 as a separate Event of Default, and such failure is not excused by Force Majeure or cured within three (3) Business Days after written notice thereof to such Party;

    (d) the Party shall be subject to a Bankruptcy Proceeding;

15. **Remedies upon an Event of Default**

    (a) If an Event of Default occurs with respect to a party (the "Defaulting Party"), the other Party (the "Non-Defaulting Party") may, for so long as the Event of Default is continuing, (i) designate a date (which date shall be no earlier than the day the Event of Default occurs and not more than twenty (20) Business Days after the Non-Defaulting Party delivers written notice to the Defaulting Party) (the " Early Termination Date "), on which date all outstanding Transactions shall terminate and (ii) withhold any payments due the Defaulting Party in respect of such terminated Transactions.

    (b) This subsection 15. (b) shall be without prejudice and in addition to any right of netting, combination of accounts, counterclaim, lien or other right to which any Party is at any time otherwise entitled (whether by operation of law, contracts or otherwise).

    (c) In addition to any other rights or remedies provided under this Agreement, if a Party fails to pay to the other Party any amounts when due, the aggrieved Party shall have the right to (i) suspend performance under any or all Transactions until such amounts plus interest at the Interest Rate have been paid and/or (ii) exercise any remedy available at law or in equity to enforce payment of such amount plus interest at the Interest Rate; provided, however, if the non-paying Party, in good faith, shall dispute the amount of any such billing or part thereof and shall pay such amounts as it concedes to be correct, no suspension shall be permitted.

5/9/2003

16. Integration, Assignability and Confidentiality. No waiver or forbearance by either Seller or Buyer of any breach or default of the other under this Agreement shall operate as a waiver or forbearance of any future breach or default. This Agreement may not be assigned by either party without the prior written consent of the other, subject to credit approval, and may not be unreasonably withheld. The terms and conditions hereof shall be kept confidential by the parties except to the extent required to obtain gas transportation or to comply with applicable law. As to all matters of construction and interpretation, this Agreement shall be interpreted, construed and governed by the laws of the State of New Hampshire. This Agreement shall only be amended by a written instrument executed by the parties hereto. This Agreement contains the entire understanding of the parties with respect to the matters contained herein. There are no promises, covenants, or undertakings between the parties other than those expressly set forth herein.

17. Arbitration. The Parties hereto agree that any disputes (which are not within the exclusive jurisdiction of a government agency or commission) relating to this Agreement and the transactions contemplated hereby shall be referred, settled and finally resolved by binding arbitration to be conducted in Manchester, New Hampshire in accordance with the rules of the American Arbitration Association (AAA). The Party initiating arbitration shall notify the other in writing of the issue or issues which may be subject to dispute and, absent resolution thereof within thirty (30) days of the date of said notice, said dispute shall be submitted to arbitration. Each Party shall nominate one arbitrator within ten (10) days of notification of submission to arbitration, and a third shall be chosen within ten (10) days thereof by the two nominated arbitrators or, if they fail to timely appoint an arbitrator, the secretary or other appropriate official of the AAA shall select the third arbitrator. If one Party fails to nominate its arbitrator, the dispute shall be settled by the single arbitrator nominated by the other Party. The arbitrators shall conduct a hearing and within thirty (30) days thereafter, unless such time is extended by agreement of the Parties, shall issue a written decision including a determination of the allocation of the cost of arbitration (including attorneys fees) to each of the Parties. The arbitrators shall not have power to amend, modify or add to this Agreement. Subject to such limitation, the decision of the arbitrators (including any determination that the dispute is arbitrable) shall be final and binding on the Parties, and shall be enforceable in any court of competent jurisdiction. BUYER AND SELLER EACH WAIVE TRIAL BY JURY WITH RESPECT TO ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

THIS AGREEMENT MAY BE EXECUTED IN MULTIPLE COUNTERPARTS AND THIS AGREEMENT IS EXECUTED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES.

SELLER: SPRAGUE ENERGY CORP.
By: _[signature]_
Name: Thomas F. Flaherty
Title: Vice President Industrial Marketing
Date: 5/28/03

BUYER: CITY OF LOWELL
LOWELL PUBLIC SCHOOLS
By: _[signature]_
Name: Stephen M. Fortado
Title: Assistant Superintendent for Finance & Operatti
Date: 5/14/03

144584(2/11/2000)

5/9/2003

5